**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CATHERINE PETZEL, | ) | CASE NO. 2:12-CV-1066 |
| | ) | |
| *Plaintiff*, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | **DEFENDANT'S MOTION FOR** |
| REDFLEX TRAFFIC SYSTEMS, INC., | ) | **SUMMARY JUDGMENT** |
| | ) | |
| *Defendant*. | ) | |

Defendant Redflex Traffic Systems, Inc. ("Redflex" or "Defendant") hereby moves this

Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for an Order granting it

summary judgment as to all claims set forth in Plaintiff Catherine Petzel's Complaint.  Redflex

respectfully submits there are no genuine issues of material fact necessitating a trial in this case

and that Redflex is entitled to judgment as a matter of law.  The points and authorities supporting

this Motion are set forth in the attached Memorandum in Support.

Respectfully submitted,

**JACKSON LEWIS P.C.**

*/s/ Vincent J. Tersigni*
Vincent J. Tersigni (0040222)
Michelle T. Hackim (0084941)
6100 Oak Tree Blvd, Suite 400
Cleveland, Ohio  44131
Phone:  (216) 750-0404
Fax:     (216) 750-0826
Email: Vincent.Tersigni@jacksonlewis.com
           Michelle.Hackim@jacksonlewis.com

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CATHERINE PETZEL, | ) | CASE NO. 2:12-CV-1066 |
| | ) | |
| *Plaintiff*, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | |
| REDFLEX TRAFFIC SYSTEMS, INC., | ) | |
| | ) | |
| *Defendant.* | ) | |

---

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**MOTION FOR SUMMARY JUDGMENT**

---

Respectfully submitted,

**JACKSON LEWIS P.C.**

*/s/ Vincent J. Tersigni*
Vincent J. Tersigni (0040222)
Michelle T. Hackim (0084941)
6100 Oak Tree Blvd, Suite 400
Cleveland, Ohio 44131
Phone: (216) 750-0404
Fax: (216) 750-0826
Email: Vincent.Tersigni@jacksonlewis.com
        Michelle.Hackim@jacksonlewis.com

*Attorneys for Defendant*
*Redflex Traffic Systems, Inc.*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................ 1

II.     STATEMENT OF FACTS ........................................................................... 1

      A.     Plaintiff Is Hired By Redflex As A Regional Sales Manager In Ohio ..................1

      B.     Plaintiff Executes Only Three Contracts During the First Two Years of Her Employment with Redflex ......................................................................................2

      C.     Plaintiff is Placed On A PIP After She Fails to Execute Any Contracts Halfway Through The First Quarter of FY 2012......................................................4

      D.     Rosenberg Does Not Terminate Plaintiff's Employment For Failing To Meet The Terms Of Her First PIP, And Instead Places Her On A Second PIP Along With Buckels and Kolack....................................................................5

      E.     Kolack Is Transferred To A Position With Redflex's New Student Guardian Product Line Because Of His Pivotal Role In the Development Of The Product And His Relevant Prior Work Experience ....................................6

      F.     Plaintiff's Employment With Redflex Is Terminated At The End of The Second Quarter Of FY 2012 For Failing To Meet The Goals Of Her Second PIP............................................................................................................8

III.    LEGAL ARGUMENT................................................................................. 9

      A.     Standard for Summary Judgment.............................................................................9

      B.     Redflex Did Not Discriminate Against Plaintiff on the Basis of Her Gender or National Origin ....................................................................................................9

            1.     Plaintiff Cannot Set Forth Any Direct Evidence of Discrimination ......... 10

            2.     Plaintiff Cannot Establish a Prima Facie Case .......................................... 12

                 a.     Kolack and Buckels were not similarly-situated to Plaintiff ........ 13

                 b.     Plaintiff was not given less sales support than male Sales Employees................................................................................. 15

                 c.     Other male Sales Employees were placed on PIPs by Rosenberg for poor sales performance and either were terminated for failing to meet their PIP goals or else resigned to avoid termination ................................................................. 16

            3.     Redflex Had Legitimate, Nondiscriminatory Reasons for Terminating Plaintiff's Employment....................................................... 17

            4.     Plaintiff Cannot Establish Pretext........................................................... 18

IV.    CONCLUSION........................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Carter v. Russo Realtors*, 2001 Ohio App. LEXIS 2273 (Ohio App. 10th Dist. May 22, 2001) . 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................. 9

*Genaro v. Cent Transp.*, 84 Ohio St. 3d 293 (1999).......................................................... 9

*Manofsky v. Goodyear Tire & Rubber Co.,* 69 Ohio App.3d 663 (1990) .................................... 17

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) .................................................... 10, 12

*Mitchell v. Toledo Hospital*, 964 F.2d 577 (6th Cir. 1992) ......................................... 13

*Parries v. Makino, Inc*., 148 Fed. Appx. 291 (6th Cir. 2005)........................................... 20

*Reeves v. Sanderson Plumbing Products Inc.*, 530 U.S. 133 (2000)........................................... 18

*Rowan v. Lockheed Martin Energy Systems, Inc*., 360 F.3d 544 (6th Cir. 2004)........................ 12

*Russell v. Univ. of Toledo*, 537 F.3d 596 (6th Cir. 2008) ............................................... 12

*Seeger v. Cincinnati Bell Telephone Co*., 681 F.3d 274 (6th Cir. 2012) ..................................... 18

*Summers v. Leis*, 368 F.3d 881 (6th Cir. 2004) .............................................................. 9

*Tessmer v. Nationwide Life Ins. Co.*, 1999 Ohio App. LEXIS 4633 (Ohio App. 10th Dist.
Sept. 30, 1999) ....................................................................................... 11

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981) ........................................ 13

*White v. Baxter Healthcare Corp.,* 533 F.3d 381 (6th Cir. 2008) .................................. 18

*Wixson v. Dowagiac Nursing Home*, 87 F.3d 164 (6th Cir. 1996)............................................ 17

*Younis v. Pinnacle Airlines, Inc*., 610 F.3d 359 (6th Cir. 2010)......................................... 9, 10, 13

**Statutes**

Ohio Revised Code §4112 ................................................................................... 9

**Rules**

Fed. R. Civ. P. 56(c) ...................................................................................... 9

## I.    INTRODUCTION

Redflex terminated the employment of Plaintiff Catherine Petzel ("Petzel" or "Plaintiff") on December 31, 2011 after she failed to meet the sales goals established in her second consecutive performance improvement plan ("PIP").  In her Complaint, Plaintiff alleges that her employment termination was unlawfully based on her national origin and gender.  Plaintiff has failed to adduce sufficient evidence to support either of her claims.  Rather, the evidence establishes that Plaintiff's employment was terminated for legitimate business reasons unrelated to her national origin and gender.  Accordingly, Redflex should be granted summary judgment on Plaintiff's claims.

## II.   STATEMENT OF FACTS

### A.    Plaintiff Is Hired By Redflex As A Regional Sales Manager In Ohio.

Redflex develops and manufactures a wide range of digital photo law enforcement products, including red light camera, speed camera and school bus stop arm camera systems. (Kolack Dec.[1] ¶3; Buckels Dec.[2] ¶5; Anton Dec.[3] ¶3)   Redflex's parent company is headquartered in Melbourne, Australia.  (*Id.*)

Plaintiff, a native of Australia, was hired by Redflex as a Regional Sales Manager for the Midwest Region of the United States on or about January 27, 2009.  (Pl. Dep.[4] 29; Pl. Dep. Ex. C)  As a Regional Sales Manager, Plaintiff was expected to meet certain sales goals by

---

[1] "Kolack Dec." refers to the Declaration of Darren Kolack dated October 14, 2014, which is included in Defendant's Appendix in Support of its Motion for Summary Judgment ("Appendix") as Exhibit 1.

[2] "Buckels Dec." refers to the Declaration of Charlie Buckels dated October 8, 2014, which is included in Defendant's Appendix as Exhibit 2.

[3] "Anton Dec." refers to the Declaration of Donetta Anton dated October 8, 2014, which is included in Defendant's Appendix as Exhibit 3.

[4] "Pl. Dep." refers to the deposition of Plaintiff which was taken on March 24, 2014. Pertinent portions of Plaintiff's deposition transcript and cited exhibits are included collectively as Exhibit 4 of Defendant's Appendix.  A copy of the full deposition transcript is being filed separately with the Court.

executing contracts with law enforcement agencies and municipalities for the use of Redflex products in a designated territory.

At all times relevant, Plaintiff reported directly to Mark Etzbach ("Etzbach"), Redflex's former Regional Sales Director for the Midwest Region. (Pl. Dep. Ex. C; Pl. Dep. 33) Plaintiff also reported indirectly to Aaron Rosenberg ("Rosenberg"), Etzbach's supervisor and Redflex's former Vice President of Sales, as well as Karen Finley ("Finley"), Redflex's former Chief Executive Officer. (Pl. Dep. 34; Etzbach Dec.[5] ¶5; Stevens Dep.[6] 11; Finley Dep.[7] 34-39) Plaintiff was an at-will employee of Redflex at all times. (Pl. Dep. Ex. C)

Upon her hire, Plaintiff's sales territory only included Ohio, but later expanded to include parts of Iowa as well. (Pl. Dep. 66-67) Because a number of states either have already passed legislation prohibiting the use of red light cameras or are considering such legislation, Redflex is unable to market its products throughout the entire United States. (Buckels Dec. ¶5; Pl. Dep. 29, 30-32, 66, 124-126) As such, the sales territories for Redflex Sales Managers often expanded or contracted in response to the current political or legal climate in that part of the country in regard to digital photo radar law enforcement products. (Buckels Dec. ¶5; Pl. Dep. 29)

### B. **Plaintiff Executes Only Three Contracts During the First Two Years of Her Employment with Redflex.**

During the first two years of her employment with Redflex, Plaintiff secured only three product contracts for Redflex. (Pl. Dep. 85-86) These contracts were with the Ohio cities of Garfield Heights, South Euclid, and Parma Heights. (Pl. Dep. 85-86) However, at the time these

---

[5] "Etzbach Dec." refers to the Declaration of Mark Etzbach dated August 27, 2014, which is included as Exhibit 5 of Defendant's Appendix.

[6] "Stevens Dep." refers to the deposition of Sandra Stevens, which was taken on May 1, 2014. Pertinent portions of Stevens' deposition and cited exhibits are collectively included in Defendant's Appendix as Exhibit 6.

[7] "Finley Dep." refers to the deposition of Karen Finley, which was taken on April 30, 2014. Pertinent portions of Finley's deposition and cited exhibits are collectively included in Defendant's Appendix as Exhibit 7.

contracts were executed, none of the cities were large enough, either in terms of population or in the number of operational Redflex products, for Plaintiff to receive any sales commission for these contracts.[8]  (Pl. Dep. 90)

On or about July 1, 2011, the beginning of Redflex's fiscal year 2012 ("FY 2012"), Rosenberg, with Finley's approval and encouragement, established minimum sales goals for all Redflex Sales Managers and Sales Directors (collectively referred to as "Sales Employees").[9] These sales goals provided as follows:  1) Existing Sales Employees, which included Plaintiff, Darren Kolack ("Kolack"), Etzbach, Charlie Buckels ("Buckels") and Peter McNerney ("McNerney"), were expected to execute an "absolute minimum" of four contracts per year and at least one contract per quarter; and 2) All new Sales Employees, which included Niels Nielson ("Nielson") and David Samuel ("Samuel"), were expected to execute a minimum of two contracts per year.  (Pl. Dep. 83-84; Pl. Dep. Ex. K; Finley Dep. 50-51, 58; Finley Dep. Ex. 9; Buckels Dec. ¶6; Kolack Dec. ¶10)  Rosenberg communicated these sales goals to each Sales Employee, including Plaintiff, via email on July 14, 2011.  (Finley Dep. 58; Finley Dep. Ex. 9) In his email, Rosenberg stated that if a Sales Employee fails to meet the minimum goals, "they will be swiftly dealt with (including up to immediate termination.)"  *See* Finley Dep. 58; Finley Dep. Ex. 9; Buckels Dec. ¶6; Kolack Dec. ¶10.  Prior to this, Redflex did not have any formal sales goals requirements in place, but generally expected each Sales Employees to execute a minimum of three contracts per year.  (Finley Dep. 66; Finley Dep. Ex. 11; Buckels Dec. ¶7)

---

[8] Per Redflex's Sales Commission Policy that was in place during the period of Plaintiff's employment, commission would only be paid for contracts entered into where the city has a population over 10,000 and/or had at least four operational Redflex systems installed.  (Pl. Dep. 75-76; Pl. Dep. Ex. E, F)  Accordingly, Plaintiff relied on her annual salary of $70,000 for her income.  (Pl. Dep. 147-148)

[9] Sales Directors have similar job duties to those of Sales Managers, but the Director role is classified as a more senior role at Redflex and Sales Directors have more responsibility regarding budgets than Sales Managers. (Stevens Dep. 15-16)

Plaintiff did not meet any of these minimum sales expectations at any point during her employment with Redflex. (Pl. Dep. 85-86)

As part of his establishment of the minimum sales goals for FY 2012, Rosenberg required that each Sales Employee submit to him a Weekly Sales Report which outlined, among other things, his/her sales activities for the week, current "hot/qualified leads", and deals that were in active negotiations or were likely to close in the near future. (Finley Dep. 58, 77-78, 93; Finley Dep. Exs. 9, 13-14)

### C. Plaintiff is Placed On A PIP After She Fails to Execute Any Contracts Halfway Through The First Quarter of FY 2012.

As of August 2011, Plaintiff had not executed any contracts in calendar year 2011.[10] (Pl. Dep. 80-81, 84-85) On August 29, 2011, Rosenberg sent an email to Plaintiff in which he again outlined the minimum sales goal of executing one contract per quarter, and also indicated that he had noticed "minimal tangible forward progress to advance both sales cycles in [Plaintiff's] pipeline or execute new contracts." (Pl. Dep. 99; Pl. Dep. Ex. L) Rosenberg advised Plaintiff that her employment would be terminated if she failed to produce either a fully executed contract in Youngstown or Norwalk and/or an official and formal contract award/selection in Waterloo in the next thirty (30) days, or by October 1, 2011 ("First PIP"). *See* Pl. Dep. 99; Pl. Dep. Ex. L. Youngstown, Ohio, Norwalk, Iowa, and Waterloo, Iowa were all cities that Plaintiff had identified as her "most advanced and qualified pursuits" several months prior in her Weekly Sales Reports. *Id.* By October 1, 2011, Plaintiff had failed to execute a contract and she did not produce an official contract award/selection with any of her advanced pursuits. (Pl. Dep. 100)

---

[10] An official contract award exists where city officials have agreed in writing to enter into a contract with Redflex at some point in the future. (Kolack Dec. ¶12; Finley Dep. 78-79) While certainly a positive indication of potential contract execution for a Sales Employee, an official contract award will not always result in an executed contract because the governing legislative body (i.e., City Council) for the city must ultimately vote to approve the contract. (Finley Dep. 81-83; Kolack Dec. ¶12) Accordingly, an official contract award without an executed contract is not counted towards the Sales Employees' minimum sales goals. (Kolack Dec. ¶12)

Despite failing to meet the goals of the First PIP, however, Plaintiff's employment was not terminated.  (Pl. Dep. 100, 110; Pl. Dep. Ex. M)  Instead, Plaintiff's direct supervisor, Etzbach, recommended to Rosenberg that Plaintiff's employment with Redflex be maintained through the end of December 2011 (end of second quarter of FY 2012) at which point Plaintiff's employment would be terminated if she failed to execute a contract.  (Finley Dep. 103-104; Finley Dep. Ex. 17)

> **D.**     **Rosenberg Does Not Terminate Plaintiff's Employment For Failing To Meet The Terms Of Her First PIP, And Instead Places Her On A Second PIP Along With Buckels and Kolack.**

Rosenberg agreed to Etzbach's recommendation, and he placed Plaintiff on another performance improvement plan ("Second PIP") through the end of 2011, along with Buckels and Kolack who had also not executed any contracts in the first quarter of FY 2012.[11]  (Pl. Dep. 110; Pl. Dep. Ex. M)  Each PIP provided that the Sales Employee would be terminated if he or she failed to execute two contracts by the end of the second quarter of FY 2012, which is December 31, 2011.  (Pl. Dep. 110; Pl. Dep. Ex. M; Finley Dep. 49, 76; Finley Dep. Exs. 7, 12; Buckels Dec. ¶8; Buckels Dec. Ex. A; Kolack Dec. ¶10; Kolack Dec. Ex. B)

In Plaintiff's Second PIP, which was in the form of an email to Plaintiff from Etzbach dated October 6, 2011, Etzbach identified all of Plaintiff's "advanced stage pursuits" and provided that she should naturally focus on these cities in order to meet her goal of achieving two executed contracts within the next ninety (90) days.  *See* Pl. Dep. Ex. M.  As Buckels and Kolack both directly reported to Rosenberg, Rosenberg drafted their respective PIPs and delivered the PIPs to Buckels and Kolack via email in early October 2011 as well.  (Etzbach Dec. ¶10; Finley Dep. 76; Finley Dep. Ex. 12; Buckels Dec. Ex. A; Kolack Dec. Ex. B)

---

[11] Both Etzbach and McNerney had each executed at least one contract during the first quarter of FY 2012, and therefore they were not placed on a PIP.   (Finley Dep. 59; Finley Dep. Ex. 10)

In the second quarter of FY 2012, Plaintiff failed to obtain any executed contracts with her advanced stage pursuits or with any other city for that matter.  (Pl. Dep. 127; Compl. ¶22)  Plaintiff also did not obtain any official contract awards during the second quarter of FY 2012. (Pl. Dep. 123; Pl. Dep. Ex. O)  Buckels, however, did execute two contracts in the second quarter of FY 2012:  one with the city of Vestavia Hills, Alabama on December 1, 2011 and another with the city of Clearwater, Florida on November 22, 2011.  (Buckels Dec. ¶9; Buckels Dec. Ex. B)  Accordingly, Buckels' employment with Redflex was not terminated.  (Buckels Dec. ¶9)

      **E.**    **Kolack Is Transferred To A Position With Redflex's New Student Guardian Product Line Because Of His Pivotal Role In the Development Of The Product And His Relevant Prior Work Experience.**

Kolack did not obtain any executed contracts in the second quarter of FY 2012. (Kolack Dec. ¶13).  However, Kolack did receive official contract awards with two cities in his territory, Miami, Arizona and Nogales, Arizona during the first two quarters of FY 2012.  (Kolack Dec. ¶11; Kolack Dec. Ex. C)  Due to negative public response to the award in Miami, Arizona, however, the resolution needed to enable implantation of Redflex's products there was rejected by the Miami City Council.  (*Id.*)  The award in Nogales, Arizona was ratified by the Nogales City Council, but Redflex ultimately directed Kolack to terminate the final phases of the contract due to operational challenges in the Arizona market.  (*Id.*)  In fact, in the first half of FY 2012, Redflex decided not to actively pursue any business in Arizona and New Mexico, two of the three states in Kolack's sales territory.[12]  (*Id.*)  Redflex's decision was prompted by the negative political and legal climate that existed in those states during this time with respect to Redflex's products.  (*Id.*)

---

[12] The other state in Kolack's sales territory at this time was Colorado.  (Kolack Dec. ¶9)

Additionally, Kolack's business focus in the first and second quarters of FY 2012 had been on developing a new product for Redflex called Student Guardian.  (Kolack Dec. ¶¶7, 9; Finley Dep. 84, 97)  Student Guardian is a school bus stop arm camera photo enforcement solution for monitoring and deterring drivers who illegally pass school buses.  (Kolack Dec. ¶6; Finley Dep. 84)  The product is marketed exclusively to public school districts in those states where there is either enabling legislation (i.e. laws that permit school districts to use digital photo radar law enforcement products) or there is no legislation prohibiting the use of such products.  (Kolack Dec. ¶6)

In 2011, Redflex's Student Guardian product was still in its infancy stages, but Kolack played a pivotal leadership role in its initial and ongoing development.  (Kolack Dec. ¶¶7-9; Kolack Dec. Exs. B, C; Finley Dep. 84, 97)  In the first and second quarters of FY 2012 Kolack identified the potential market for Student Guardian, worked extensively with Redflex's product development and engineering teams to help develop the business requirements and technical solutions for Student Guardian, assisted in the development of "pilot" contracts for the product and also was in the process of negotiating executed contracts with several cities for this new product.  (Kolack Dec. ¶7; Kolack Dec. Ex. C; Finley Dep. 84, 97)  Kolack also had prior sales experience in the public K-12 education market, and therefore was familiar with marketing and selling to public school districts.  (Kolack Dec. ¶8; Kolack Dec. Ex. C)

In light of Kolack's knowledge of the Student Guardian product and his extensive involvement in its development, Rosenberg determined in or around December 2011 that Kolack should be transitioned to a position where he would support Student Guardian on a full-time basis.  (Kolack Dec. ¶¶13-14; Kolack Dec. Ex. C; Finley Dep. 97)  On January 1, 2012, Kolack's position effectively changed from Regional Sales Manager to National Business Development

Manager for Student Guardian. (Kolack Dec. ¶14; Kolack Dec. Ex. C) Although Kolack had not met the terms of his PIP, Rosenberg considered Kolack's past contribution of eleven executed contracts since beginning his employment with Redflex and his recent official contract awards in Miami and Nogales as an indication of his sales ability. (Kolack Dec. ¶¶9, 13; Kolack Dec. Exs. A, C) However, Rosenberg made sure that Kolack was held to specific sales objectives and goals in this new role and he outlined the same in a Business Development Transfer Plan signed by Kolack in March 2012. (Kolack Dec. ¶14; Kolack Dec. Ex. C)

   F.   **Plaintiff's Employment With Redflex Is Terminated At The End of The Second Quarter Of FY 2012 For Failing To Meet The Goals Of Her Second PIP.**

   With less than thirty days until the end of the second quarter of FY 2012 and the expiration of her Second PIP, Plaintiff had not secured any executed contracts. (Pl. Dep. Ex. O) On December 1, 2011, Rosenberg sent a detailed email to both Etzbach and Finley in which he evaluated and assessed Plaintiff's likelihood of meeting the Second PIP goals based on her progress thus far. (Finley Dep. 99-100; Finley Dep. Ex. 15 at D000145-146) Specifically, Rosenberg noted that even Plaintiff's "most advanced pursuits and contracts in negotiation cycles have reversed course," and therefore he believed her employment should be terminated as a result at the end of the quarter. (Finley Dep. Ex. 15 at D000145-146) However, Rosenberg stated that he wanted Etzbach's input as to whether Plaintiff should be terminated given that Etzbach was Plaintiff's direct supervisor. (*Id*. at D000146) Etzbach responded to Rosenberg's email and stated that he agreed with Rosenberg's assessment of Plaintiff's performance and his recommendation of termination. (*Id*. at D000144)

   In a letter dated December 30, 2011, Redflex notified Plaintiff of her employment termination, effective December 31, 2011, due to her failure to meet the terms of her Second PIP. (Finley Dep. 15; Finley Dep. Ex. 16; Pl. Dep. 128; Pl. Dep. Ex. Q; Etzbach Dec. ¶12)

8

### III.   LEGAL ARGUMENT

Plaintiff asserts two causes of action in her Complaint: (1) Gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Ohio law; and (2) National origin discrimination in violation of Title VII and Ohio law.  As explained below, none of Plaintiff's claims have any merit.  Therefore, Plaintiff's Complaint should be dismissed in its entirety and Defendant should be awarded summary judgment as a matter of law.

### A.   Standard for Summary Judgment.

Summary judgment is proper when the moving party establishes that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and upon which that party would bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To defeat a motion for summary judgment, the non-moving party may not rely merely upon bare assertions, conclusory allegations, or suspicions. *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004).

Under these standards and the undisputed facts, Plaintiff cannot establish the elements of any actionable claim against Redflex.

### B.   Redflex Did Not Discriminate Against Plaintiff on the Basis of Her Gender or National Origin.

Plaintiff asserts state and federal claims of discrimination on the basis of her gender and national origin.  All of these claims are generally subject to the same legal standard, and they all fail under the law.[13]  To establish a claim for discrimination on the basis of her gender and

---

[13] When addressing claims under Ohio Revised Code §4112, "[t]he Ohio Supreme Court has ruled that federal case law interpreting and applying Title VII is generally applicable."  *Genaro v. Cent Transp.*, 84 Ohio St. 3d 293, 295 (1999).

national origin, Plaintiff must either present direct evidence of discrimination or state an indirect claim under the *McDonnell Douglas* burden-shifting framework. *Younis v. Pinnacle Airlines, Inc*., 610 F.3d 359, 363 (6th Cir. 2010). Plaintiff cannot establish any actionable claim of discrimination under either method.

### 1. Plaintiff Cannot Set Forth Any Direct Evidence of Discrimination.

Direct evidence of discrimination is evidence that requires the conclusion that unlawful discrimination was a "motivating factor" for the employer's adverse employment action against the claimant. *Younis,* 610 F.3d at 363. Here, Plaintiff has not offered any direct evidence of discrimination on the basis of her gender or her national origin. At most, Plaintiff alleges that Finley made stray remarks about "Australians" while Finley was presenting at a large sales conference in October 2011 and in passing to Plaintiff's former supervisor, Etzbach. (Compl. ¶¶ 27-29; Pl. Dep. 44-45, 53, 57-59) The following are the allegations that Plaintiff apparently offers as direct evidence of discrimination on the basis of her national origin[14]:

- In or around the time of Plaintff's hire, Finley once allegedly asked Etzbach how Plaintiff's accent was received in the marketplace;

- In or around the time of Plaintiff's hire, Finley once allegedly questioned Etzbach about the propriety of having an Australian in a sales position in light of certain recent sales tactics by a U.S. based competitor of Redflex's attacking its Australian roots; and

- During a national sales conference presentation in Culver City, California, in October 2011 Finley expressed frustration over a delay in product development from Redflex's parent company, which is located in Australia, and allegedly made comments about the work ethic and responsiveness of Australians in general.

  (Pl. Dep. 44-45, 53, 56-59; Compl. ¶¶27-29; Etzbach Dec. ¶16; Finley Dep. 114-115)

---

[14] Plaintiff's Complaint is devoid of any reference to comments made to Plaintiff or anyone else about Plaintiff's gender.

None of these alleged stray remarks, however, constitute direct evidence of discrimination.  "To rise above the level of a stray remark and constitute direct evidence of discrimination, a remark must:  (1) be made by the decision maker or one whose recommendation is sought by the decision maker; (2) be related to the specific decision challenged; and (3) be made close in time to the decision."  *See Carter v. Russo Realtors*, 2001 Ohio App. LEXIS 2273, *7 (Ohio App. 10th Dist. May 22, 2001)[15]; *see also Tessmer v. Nationwide Life Ins. Co.*, 1999 Ohio App. LEXIS 4633, *17-18  (Ohio App. 10th Dist. Sept. 30, 1999)(holding "comments that are vague, ambiguous or isolated do not support a finding of discrimination and cannot be used as direct evidence to establish that an adverse employment action was more likely than not motivated by discriminatory intent").  As set forth below, none of these comments meet the test for direct evidence.

First, these comments are not direct evidence of discrimination because they were not related in any way to Redflex's decision to terminate Plaintiff's employment, nor were they made close in time to when such decision was made.  It is undisputed that Rosenberg ultimately made the decision to terminate Plaintiff's employment due to her failure to meet the terms of her PIP.  (Etzbach Dec. ¶12)  Although Rosenberg consulted with Finley after he made the decision, Finley did not have any input into the same because she was not as familiar with Plaintiff's job performance as were Rosenberg and Etzbach.  (Finley Dep. 99-100; Finley Dep. Ex. 15)

Moreover, Plaintiff has produced no evidence regarding the timing of these alleged statements.  Plaintiff's entire argument is essentially that (a) statements were made and (b) some type of adverse action occurred.  She does not, however, actually link those two elements and show the statements were <u>related</u> to the challenged decision and made <u>close in time</u>.  Finley testified that when Petzel was initially hired in 2009, a competitor of Redflex's, American

---

[15] Copies of all unpublished cases cited herein are attached to Defendant's Appendix as Exhibit 8.

Traffic Solutions ("ATS"), was using the fact that Redflex was an Australian company to its advantage by urging potential customers to "buy American" and to therefore avoid doing business with Redflex. (Finley Dep. 115) Finley acknowledged that she was frustrated with this tactic and once inquired whether hiring Petzel, a native of Australia with an Australian accent, in a sales position could somehow negatively impact Redflex. (Finley Dep. 116; Etzbach Dec. ¶¶15-16) However, this happened near the time of Petzel's hire in 2009 and was not in any way related to Rosenberg's decision to place her on a PIP several years later. (*Id*.) In response to Finley's inquiry, Etzbach assured Finley that it was not an issue, and Finley never addressed the matter again. (Etzbach Dec. ¶16; Finley Dep. 116) To be considered direct evidence, Plaintiff must do more than vaguely allege that some type of discriminatory comment was made and related to some type of challenged employment action. By relying exclusively on vague allegations and connections, Plaintiff failed to establish any direct evidence of discrimination.

### 2. Plaintiff Cannot Establish a Prima Facie Case.

Without direct evidence, Plaintiff must follow the *McDonnell Douglas*[16] burden-shifting analysis and must first establish a prima facie case. *Rowan v. Lockheed Martin Energy Systems, Inc*., 360 F.3d 544, 547-48 (6th Cir. 2004). Under the *McDonnell Douglas* framework applicable to indirect claims of discrimination, Plaintiff must establish a *prima facie* case of discrimination by showing (1) she was a member of a protected class; (2) she was discharged; (3) she was qualified for her position; and (4) she was treated differently than similarly-situated, non-protected employees. *Russell v. Univ. of Toledo*, 537 F.3d 596, 604 (6th Cir. 2008). If Plaintiff is able to make this *prima facie* showing, the burden shifts to Redflex to articulate a legitimate, nondiscriminatory reason for terminating her employment. *Id*. The burden then returns to

---

[16] *See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).*

Plaintiff to prove by a preponderance of the evidence that Redflex's proffered reason for terminating her employment is actually a pretext for unlawful discrimination. *Id*.

Plaintiff is a woman of Australian descent and her employment with Redflex was terminated. However, Plaintiff cannot establish that she was treated differently from any similarly-situated non-Australian and/or male employees. It is Plaintiff's burden "to demonstrate that similarly-situated employees were not treated equally." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 249 (1981). "[T]o be deemed 'similarly situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct **without such differentiating or mitigating circumstances** . . ." *Younis*, 610 F. 3d at 364 (*quoting Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992)) (emphasis added). Plaintiff fails to carry this burden and therefore cannot establish a *prima facie* case of gender or national origin discrimination. Even if she could, Redflex has articulated legitimate, nondiscriminatory reasons for its decision to terminate Plaintiff's employment.

### a. *Kolack and Buckels were not similarly-situated to Plaintiff.*

Plaintiff cannot establish that Redflex treated her any differently than similarly-situated non-Australian and/or male employees. As discussed above, Buckels and Kolack were both placed on PIPs in October 2011. Unlike Plaintiff, Buckels met the terms of his PIP and executed two contracts in the second quarter of FY 2012. Accordingly, Buckels was not similarly-situated to Plaintiff because he met his PIP goals.

While Kolack did not meet the terms of his PIP, the undisputed evidence demonstrates that Kolack was not similarly-situated to Petzel for a number of reasons. First, Kolack was heavily involved with the development and implementation of Redflex's Student Guardian

product in 2011, which naturally limited the time he had to focus on executing contracts for Redflex's other products.  Plaintiff was not involved with new product development for Redflex in 2011 and was therefore able to focus her attention solely on producing executed contracts for Redflex during the period of both of her PIPs.  Although Plaintiff alleges in her Complaint that she was not "invited to participate" in new product development on the basis of her gender, she fails to produce any evidence supporting this baseless allegation.  Indeed, the undisputed facts demonstrate that Kolack participated in new product development because he initiated the product launch of Student Guardian, even identifying potential markets for the product.  (Kolack Dec. ¶7)  Further, Plaintiff did not have any prior work experience in the public K-12 education market or a background in selling and marketing to public school districts as did Kolack.  (Finley Dep. 97; Kolack Dec. ¶8)  Accordingly, Kolack's gender played no role in his involvement with new product development at Redflex.

Second, the scope of Kolack's sales territory was drastically reduced during the period of his PIP due to changes in the legal and political climate in two of the three states (Arizona and New Mexico) in his territory.  Accordingly, the number of cities that Kolack could market to for purposes of executing contracts was drastically limited through no fault of his own.  Additionally, Kolack was forced to terminate the final phases of a contract he had secured with Nogales, Arizona during the period of his PIP and an official contract award he had obtained with Miami, Arizona was rejected by Miami City Council because of negative public response to Redflex products.  (Kolack Dec. ¶11; Kolack Dec. Ex. C)

Although Plaintiff alleges in her Complaint that she was "passed over in favor of male colleagues" when new sales territories opened up, she has not adduced any evidence to support these allegations. (Compl. ¶19)  Rather, the undisputed evidence demonstrates that Plaintiff's

14

sales territory was not reduced during the period of either of her PIPs, while Kolack's territory was drastically curtailed. Moreover, Plaintiff failed to execute **any** contracts in the entire calendar year 2011 or FY 2012, and the only contract she negotiated during this time was with a small Texas town (population of 600) outside of her sales territory at the request of Etzbach.[17] (Pl. Dep. 78-80) However, this contract award **never** resulted in an executed contract for Plaintiff and therefore did not count towards her PIP goals. (*Id.*)

Finally, in terms of prior sales performance, Kolack had executed eleven contracts from the time he began his employment with Redflex in August 2007 to the time of his PIP in October 2011. (Kolack Dec. ¶9; Kolack Dec. Ex. A) In fact, Kolack had executed a contract in February 2011 with the city of Sierra Vista, Arizona. (*Id.*) Compared to Plaintiff's sales performance of only three executed contracts since her hire approximately two and a half years prior and zero sales in calendar year 2011, Kolack clearly outperformed Plaintiff in terms of his annual sales.

### b. *Plaintiff was not given less sales support than male Sales Employees.*

Plaintiff claims in her Complaint that male Sales Employees were provided more support and guidance than she was. (Compl. ¶21) The only evidence that Plaintiff adduces in support of this claim is that Rosenberg, on one occasion, did not attend a presentation in Iowa City, Iowa with her. (Pl. Dep. 101-105) However, the undisputed evidence demonstrates that Rosenberg was unable to attend the presentation because it was scheduled during the week of Thanksgiving

---

[17] Officials from Montgomery, Texas, a city with a population of approximately 600 people, indicated in or around September 2011 to Plaintiff that they desired to proceed to a contract with Redflex in the near future. (Pl. Dep. 79-80; Finley Dep. Ex. 6) Montgomery, Texas officials had contacted Etzbach after a competitor of Redflex's, American Traffic Solutions ("ATS"), declined to proceed to contract with the city because it apparently determined that Montgomery was not a "viable" city for any digital photo law enforcement products. (Finley Dep. Ex. 6) Etzbach was unable to meet with the city officials, so he asked that Plaintiff travel to Texas to meet with them in his absence. (Pl. Dep. 78; Finley Dep. Ex. 6) However, Redflex never ultimately entered into a contract with the city for a variety of reasons, and therefore it was not considered a contract executed for purposes of Plaintiff meeting her quarterly and annual sales goals. (Pl. Dep. 80, 84)

when he had already planned to take time off to travel to Boston, Massachusetts for a family vacation.  (Kolack Dec. ¶15; Pl. Dep. 101-105)  Moreover, Plaintiff admits that she was assisted by four other people at the presentation, including two other Redflex employees.  (Pl. Dep. 102-102)  Included in those who attended the presentation were Kolack, Rick Willing, the Redflex account manager for that area, as well as a police Lieutenant and a police Sergeant who spoke as Redflex customers.  (*Id*.)  Indeed, Plaintiff received as much or more assistance and support for the Iowa City presentation than Kolack had ever received from Rosenberg or anyone else at Redflex.  (Kolack Dec. ¶15)

Even if Rosenberg's refusal to cancel his scheduled vacation and travel to Iowa City did demonstrate a lack of "support" for Plaintiff, she has not adduced any evidence that Rosenberg's actions were at all related to her gender.  In fact, even Etzbach admitted that, in his opinion, Rosenberg did not provide enough sales support and guidance to Sales Employees, **both male and female**.  (Etzbach Dec. ¶17)  Accordingly, Plaintiff's claim that she was given less sales support than her male colleagues because of her gender is meritless and fails as a matter of law.

### c.  *Other male Sales Employees were placed on PIPs by Rosenberg for poor sales performance and either were terminated for failing to meet their PIP goals or else resigned to avoid termination.*

Finally, Plaintiff cannot establish a prima facie case of discrimination because the undisputed facts demonstrate that four other male Sales Employees, in addition to Buckels and Kolack, were placed on PIPs by Rosenberg.  One of these employees was terminated for failing to meet the goals established in his PIP, while the other three were forced to resign after it became clear that they were not going to meet the terms of their respective PIPs.

Donald Nelson ("Nelson"), Myron Henry ("Henry"), Ricardo Trejo ("Trejo") and Nielsen are all former male non-Australian Redflex Sales Employees who were placed on PIPs between 2010 and 2012 by Rosenberg for failing to meet their sales goals.  (Anton Dec. ¶¶5-13; Anton

Dec. Exs. A-I; Etzbach Dec. ¶¶5-6, 18)  As demonstrated by his email communication with each, Rosenberg informed Nelson, Henry, Trejo and Nielsen that they were subject to termination if certain sales goals were not met (i.e., executed contracts) by the end of their respective PIPs. Like Plaintiff, none of these employees met the goals outlined in their PIPs.  (*Id*.)  Yet, unlike Plaintiff, Nelson, Henry and Trejo all acknowledged several weeks before the end of their respective PIPs that they were not going to meet the goals, understood the consequences, and then resigned their employment with Redflex as a result.  (Anton Dec. Exs. 6, 9, 15)  Nielsen did not resign his employment prior to the expiration of his PIP, but did acknowledge that he understood his employment would be terminated as a result.  (Anton Dec. ¶11; Anton Dec. Ex. F)  Nielsen even requested additional time to meet his PIP goals, but Rosenberg refused.[18] (*Id*.)  Nielsen's employment was terminated for his poor sales performance on September 28, 2012.  (Anton Dec. ¶12; Anton Dec. Ex. G)

Accordingly, the undisputed evidence demonstrates that Rosenberg did not treat poorly performing male Sales Employees any differently than Plaintiff.  *See* Anton Dec. Exs. A-I.  The only reason that Rosenberg terminated Plaintiff and not Henry, Trejo or Nelson is because Plaintiff chose not to resign.  Her gender played no role in Rosenberg's decision.

**3.     Redflex Had Legitimate, Nondiscriminatory Reasons for Terminating Plaintiff's Employment**.

Even if Plaintiff could establish a *prima facie* case of discrimination (which she cannot), Redflex may rebut such case by showing it had a legitimate, nondiscriminatory reason to terminate Plaintiff's employment.  *See Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 169 (6th Cir. 1996); *See Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 669.

---

[18] Remarkably, Plaintiff claims that Nielsen was treated more favorably than she was by Rosenberg.  (Pl. Dep. 117) Yet, the undisputed facts demonstrate that Plaintiff was actually given an additional ninety (90) days to meet her sales goals, while Rosenberg refused to extend Nielsen's PIP at all.  (Pl. Dep. 117; Anton Dec. ¶11; Anton Dec. Ex. F)

("As a general rule, the judiciary will not second guess business judgments by an employer making personnel decisions.")  This burden is not one of persuasion, but merely a burden of production.  *See Wixson,* 87 F.3d at 169.

Here, Redflex has made such a showing.  It is undisputed that Plaintiff was placed on two consecutives PIPs for poor performance and failed to meet the sales goals established in either one.  As a Regional Sales Manager, it was Plaintiff's primary job duty to execute revenue producing contracts for Redflex, which she failed to do.  Accordingly, Redflex terminated Plaintiff's employment for poor performance.  There is not a shred of evidence that Redflex's termination decision had anything to do with Plaintiff's gender or national origin.

### 4. Plaintiff Cannot Establish Pretext.

Once Redflex has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination, the burden of proof shifts back to Plaintiff to show that the proffered explanation is a pretext for unlawful discrimination.  *Reeves v. Sanderson Plumbing Products Inc.*, 530 U.S. 133 (2000).  To satisfy this burden, Plaintiff must show that Redflex's stated reason (1) has no basis in fact; (2) was not the actual reason; or (3) was a motivating factor in the employer's action.  *White v. Baxter Healthcare Corp.,* 533 F.3d 381, 393 (6th Cir. 2008).  To establish Redflex's reason is pretext, Plaintiff must do more than dispute the facts on which the Company based its termination decision.  *Seeger v. Cincinnati Bell Telephone Co*., 681 F.3d 274, 285 (6th Cir. 2012).  A reason cannot be proved to be a pretext for discrimination unless it is shown "both that the reason was false and that discrimination was the real reason."  *White*, 533 F.3d at 393.

Plaintiff does not challenge the factual accuracy of Redflex's proffered reason for her termination.  Nor can she because, by her own admission, she failed to meet the terms of both of her PIPs and failed to execute any contracts in the first and second quarters of FY 2012.  (Pl.

Dep. 81, 84-85; Compl. ¶22; Pl. Dep. Ex. M, O)  Plaintiff also does not dispute that she knew termination was the consequence for failing to meet the terms of her PIPs.  (Pl. Dep. 127; Pl Dep. Ex. M)

Additionally, Plaintiff cannot show that Redflex's non-discriminatory reason for her termination did not actually motivate Redflex's conduct. Indeed, as discussed above, Redflex routinely places Sales Employees, both male and female, Australian or American, on PIPs when they fail to execute contracts and fail to meet their sales goals.  With the exception of Kolack, who was heavily involved in new product development and lost two-thirds of his sales territory during the period of his PIP, all those male Sales Employees who failed to meet the terms of their PIPs have either been terminated or have been forced to resign their employment.

Plaintiff also has failed to adduce any evidence that her national origin motivated Redflex's decision to terminate her employment. In fact, Plaintiff admitted that Finley never made any derogatory comments directly to her about the fact that she was Australian.  (Pl. Dep. 56)  Although Plaintiff claims that her former supervisor, Etzbach, told her that Finley had asked him once about whether he had thought through hiring an Australian in a sales position, and how Plaintiff's accent was received in the marketplace, none of these comments are evidence of national origin discrimination as discussed in detail above.

Finally, Plaintiff admitted that the primary reason she felt Rosenberg was targeting her because of her gender was because Etzbach supposedly told her so.  (Pl. Dep. 41-42)  Plaintiff claims that Etzbach told her she should "pursue a lawsuit" because, in his opinion, Rosenberg had targeted her for termination because of her gender.  (*Id*.)  Yet, other than her vague recollection of her conversation with Etzbach, and Etzbach's apparent speculation regarding Rosenberg's motivations, Plaintiff has adduced no evidence to support this claim.  Indeed,

Etzbach denied ever encouraging Plaintiff to pursue this lawsuit for discrimination against Redflex, and never witnessed Rosenberg making any sort of derogatory comments about Plaintiff's gender.  (Etzbach Dec. ¶14)  Moreover, Etzbach admitted that Plaintiff failed to meet her PIP goals and that her employment was terminated as a result.  (Etzbach Dec. ¶12)  While Etzbach did not agree with Rosenberg's decision to initially place Petzel on a PIP, he also admitted that he did not agree with Rosenberg's decision to place Nelson, who had also reported to him, on a PIP either.  (Etzbach Dec. ¶5-6)  Etzbach did concur in the decision to terminate Plainitff, however.  *See* Finley Dep. Ex. 15 at D000144.

Accordingly, Plaintiff cannot set forth any "admissible evidence above and beyond that required for a prima facie showing" to demonstrate that Redflex's motivation to terminate Plaintiff's employment was based on her gender or national origin.  *Parries v. Makino, Inc*., 148 Fed. Appx. 291, 299 (6th Cir. 2005).

## IV.   <u>CONCLUSION</u>

For each and all of the foregoing reasons, Defendant Redflex Traffic Systems, Inc. respectfully submits that there are no genuine issues of material fact necessitating a trial in this matter and that it is entitled to summary judgment as a matter of law.

<div style="margin-left: 40%;">

Respectfully submitted,

**JACKSON LEWIS P.C.**

*/s/ Vincent J. Tersigni*
Vincent J. Tersigni (0040222)
Michelle T. Hackim (0084941)
6100 Oak Tree Blvd, Suite 400
Cleveland, Ohio  44131
Phone: (216) 750-0404; Fax: (216) 750-0826
Email: Vincent.Tersigni@jacksonlewis.com
     Michelle.Hackim@jacksonlewis.com

*Attorneys for Defendant*
*Redflex Traffic Systems, Inc.*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and accurate copy of the foregoing was filed with the United States District Court for the Southern District of Ohio on October 17, 2014.  Notification of such filing will be sent to all parties by operation of the Court's electronic filing system.

<div align="right">

*/s/ Vincent J. Tersigni*           
Vincent J. Tersigni (0040222)
**JACKSON LEWIS P.C.**

*One of the Attorneys for Defendant,*
*Redflex Traffic Systems, Inc.*

</div>

4833-9564-7774, v. 2