IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHEN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CATHERINE PETZEL, | ) | CASE NO. 2:12-CV-1066 |
| | ) | |
| *Plaintiff,* | ) | JUDGE ECONOMUS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE KING |
| | ) | |
| REDFLEX TRAFFIC SYSTEMS, INC., | ) | **DEFENDANT REDFLEX TRAFFIC** |
| | ) | **SYSTEMS, INC.'S REPLY BRIEF IN** |
| *Defendant*. | ) | **SUPPORT OF ITS MOTION FOR** |
| | ) | **SUMMARY JUDGMENT** |

Defendant Redflex Traffic Systems, Inc. ("Redflex") hereby submits its Reply Memorandum in Support of its Motion for Summary Judgment. For the reasons stated herein and in Defendant's Motion for Summary Judgment filed on October 17, 2014, Redflex respectfully requests the Court grant it summary judgment as a matter of law as to all of Plaintiff Catherine Petzel's ("Plaintiff") claims.

**I.    THE UNDISPUTED MATERIAL FACTS DEMONSTRATE THAT REDFLEX IS ENTITLED TO SUMMARY JUDGMENT.**

**A.    There is No Genuine Issue of Material Fact Relative to Plaintiff's Claims.**

To defeat Defendants' summary judgment motion, Plaintiff must adduce competent proof that shows the existence of a genuine issue for trial on every element of her claim. *See* Fed. R. Civ. P. 56(E); *see also Dresher v. Burt*, 75 Ohio St. 3d 280, 292 (1996). Based on the arguments set forth by Plaintiff in her Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Brief in Opposition"), there are no genuine issues of material fact for trial, and Defendant should be granted summary judgment as a matter of law.

       **1.**       **Petzel's self-serving testimony is hearsay and not direct evidence of discrimination.**

Plaintiff has failed to adduce any direct evidence of gender or national discrimination. Plaintiff admits in the Brief in Opposition that she has no direct evidence of national origin discrimination, but claims that her former supervisor, Mark Etzbach ("Etzbach"), told her that Aaron Rosenberg ("Rosenberg") targeted Plaintiff because of her gender. (Brief in Opp. at p. 14) However, Plaintiff offers no explanation for why Etzbach allegedly told her this, nor does she adduce any evidence supporting that Rosenberg targeted her because of her gender.

Moreover, Plaintiff's deposition testimony regarding what Etzbach allegedly told her is inadmissible hearsay and inadequate to create any genuine issue of material fact for purposes of preventing the entry of summary judgment. *See, e.g., Britenriker v. Mock*, 2009 U.S. Dist. LEXIS 66478 (N.D. Ohio, July 31, 2009) ("The absence of additional evidence to support a party's position beyond his own self-serving testimony is insufficient to overcome a motion for summary judgment."); *Brooks v. American Broadcasting Companies, Inc.*, 999 F.2d 167, 172 (6th Cir. 1993) ("As with a summary judgment analysis, the district court was not required to accept unsupported, self-serving testimony as evidence sufficient to create a jury question."); *Flones v. Beaumont Health Sys.*, 567 Fed. Appx. 399, 404 (6th Cir. 2014)("[I]t is well established that a court may not consider inadmissible hearsay when deciding a summary-judgment motion.") *see also Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007) ("'[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded'" (*quoting U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997)).

2

As discussed in Defendant's Motion for Summary Judgment ("Motion"), Plaintiff has never alleged that Rosenberg made any gender-related comments toward her, which is corroborated by Etzbach's Declaration filed in support of Defendant's Motion. (*See* Motion at p. 10, fn. 14)  Indeed, Etzbach's statements in his Declaration directly contradict Plaintiff's testimony in this regard:

- "…[Plaintiff] solicited my feedback on whether she should go forward with the lawsuit [against Redflex for discrimination]. I…did not encourage [Plaintiff] to file the present lawsuit or retain an attorney." (Etzbach Dec.[1] ¶13)

- "Throughout my employment with Redflex, I did not witness any derogatory remarks by Rosenberg regarding Petzel's national origin or gender." (Etzbach Dec. ¶14)

- "It is my opinion that Rosenberg…did not offer enough assistance and guidance to Redflex's sales team.  However, Rosenberg's lack of assistance and guidance was universal and was not specific to female or male employees or based on the national origin of any employee." (Etzbach Dec. ¶17)

- "Petzel's employment was terminated at the end of calendar year 2012 for her failure to meet the goals established in her PIP." (Etzbach Dec. ¶12)

Accordingly, Plaintiff has failed to establish any direct evidence of discrimination and she must prove both of her claims through circumstantial evidence, which she cannot do as discussed more fully herein and in Defendant's Motion.[2]

B.  **Plaintiff Failed to Establish Pretext.**

Given that it is undisputed that Redflex had a legitimate, non-discriminatory reason to terminate Plaintiff's employment, namely her failure meet the goals established in her PIP,

---

[1] "Etzbach Dec." refers to the Declaration of Mark Etzbach dated August 27, 2014, which was included as Exhibit 5 of Defendant's Appendix to its Motion for Summary Judgment ("Appendix") filed with this Court on October 17, 2014.

[2] Construing all evidence in the light most favorable to Plaintiff as it must for purposes of this summary judgment motion only, Redflex does not dispute that Plaintiff adduced sufficient evidence to meet her initial *prima facie* case.  However, Redflex had legitimate, non-discriminatory reasons for terminating Plaintiff's employment, and therefore her claims should be dismissed.

Plaintiff must show that Redflex's proffered explanation is a pretext for unlawful discrimination. *Reeves v. Sanderson Plumbing Products Inc.*, 530 U.S. 133 (2000). To satisfy this burden, Plaintiff must show that Redflex's stated reason (1) has no basis in fact; (2) was not the actual reason; or (3) was insufficient to justify the employer's action. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008). To establish Redflex's reason is pretext, Plaintiff must do more than dispute the facts on which the Company based its termination decision. *Seeger v. Cincinnati Bell Telephone Co.*, 681 F.3d 274, 285 (6th Cir. 2012). A reason cannot be proved to be a pretext for discrimination unless it is shown "both that the reason was false and that discrimination was the real reason." *White*, 533 F.3d at 393.

In her Brief in Opposition, Plaintiff claims that Redflex's decision to terminate her employment is pretext for three reasons: 1) Redflex failed to adhere to its own "policies"; 2) the evidence supports an inference that the reason for Petzel's termination was not what "truly motivated her discharge"; and 3) Redflex has offered "shifting rationales" for Petzel's termination. (Brief in Opp. at p. 25) All of these arguments fail as a matter of both fact and law.

> **1. Plaintiff did not execute any contracts in the first quarter of FY 2012 and Redflex did not violate any policy by placing her on a PIP as a result.**

Plaintiff has failed to present any evidence establishing that Redflex violated an internal policy by terminating her employment or placing her on a PIP. Plaintiff essentially claims that Rosenberg violated his own policy by first placing her on a PIP in August 2011 and then on another PIP in October 2011 because she "may or may not" have executed a contract with Montgomery, Texas in the first quarter of Redflex's 2012 fiscal year ("FY 2012"). (Brief in Opp. at pp. 4, 25-26) As discussed in Redflex's Motion, Plaintiff never executed any contract with Montgomery, Texas. (Motion at p. 15, fn. 17) There is no factual dispute on this point

4

given that Plaintiff acknowledged during her deposition that the contract was never executed.[3] (Pl. Dep.[4] 80)  Indeed, Plaintiff admitted that she did not execute a contract in the first quarter of FY 2012, which directly refutes her claim that Redflex violated a policy by placing her on a PIP:

> Q:  Okay.  And so you actually did not execute a contract contemplated by this [first PIP] by October 1, correct?
>
> **A:  I did not.**

(Pl. Dep. 100)(Emphasis added)

Conceding that she never actually executed a contract with Montgomery, Texas, Plaintiff next argues that because she received a "contract award" with Montgomery in September 2011, Redflex should have considered that an executed contract for purposes of meeting her first quarter sales goals and not placed her on a PIP in August 2011 or in October 2011.  (Brief in Opp. at pp. 4-5)  However, Redflex does not consider a contract award an executed contract and therefore it does not count as a "sale" for purposes of meeting a sales employee's sales goals. (Kolack Dec.[5] ¶12)  Indeed, Plaintiff admitted that Rosenberg's "policy" for FY 2012 expressly

---

[3] Plaintiff's multiple references to the deposition testimony of Sandra Stevens ("Stevens"), Redflex's former Director of Human Resources ("HR"), in her Brief in Opposition as support for her claim that she executed a contract with Montgomery, Texas are baseless and should be disregarded.  By virtue of her position in HR, not sales, Stevens had very limited knowledge of the contracts executed by Redflex's sales employees, and she did not supervise Plaintiff nor was she responsible for determining whether Plaintiff met the goals of her PIP, as demonstrated by her deposition testimony:

Q:  And [Plaintiff] made one in Montgomery, Texas.  So shouldn't she have just been taken off her PIP altogether?  …
**A:  Well, not if Aaron [Rosenberg] and Karen [Finley] considered that not a win.  I mean again, that's not my call.  I'm just giving – you know, my job is to make sure that she is being treated fairly and that she is given an ample amount of time to meet her obligations as outlined in the policy.**  (Brief in Opp. at p. 7)(Emphasis added)

[4] "Pl. Dep." refers to the deposition of Plaintiff which was taken on March 24, 2014. Pertinent portions of Plaintiff's deposition transcript were attached to Defendant's Appendix as Exhibit 4 filed with this Court on October 17, 2014.  A copy of Plaintiff's full deposition transcript was also filed separately with the Court on October 17, 2014.

[5] "Kolack Dec." refers to the Declaration of Darren Kolack dated October 14, 2014, which was included in Defendant's Appendix as Exhibit 1 filed with this Court on October 17, 2014.

stated that a sales employee must execute one contract per quarter. (Brief in Opp. at pp. 2-3) Thus, Plaintiff's claim that a contract award should have counted as a "sale" for her would actually have been contrary to Redflex policy, which is ironic considering that she is arguing Redflex violated policy by placing her on the PIP in the first place.

Accordingly, Plaintiff has failed to establish that Redflex violated a Company policy by placing her on a PIP because it is undisputed that she failed to execute any contracts in the first or second quarters of FY 2012. Therefore, Plaintiff has not adduced sufficient evidence of pretext and Redflex should be granted summary judgment on all of Plaintiff's claims.

> **2. Rosenberg's decision to transfer Kolack to Student Guardian in a full-time capacity is not evidence of pretext.**

Plaintiff's primary argument in her Brief in Opposition is that she was discriminated against based on her gender and national origin because Darren Kolack ("Kolack"), an American male, was not terminated for failing to meet the terms of his Performance Improvement Plan ("PIP"). In particular, Plaintiff alleges that Rosenberg's decision to transfer Kolack to a full-time position selling Redflex's new product, Student Guardian, instead of terminating his employment establishes pretext for gender and national origin discrimination for two reasons: 1) it allegedly violated Redflex's internal transfer policy as Kolack had been placed on a "corrective action" in October 2011; and 2) Kolack and Plaintiff failed to meet the terms of their PIPs, but only Plaintiff was fired. (Brief in Opp. at pp. 26-28) This argument fails for a number of reasons.

> **a. Kolack's involvement in new product development, proven track record of sales success and the obstacles experienced in his sales territory during the period of his PIP were the reasons Rosenberg transferred him to Student Guardian.**

As detailed in Redflex's Motion, there were several factors and/or circumstances that distinguished Kolack's and Plaintiff's job performance under their respective PIPs. (*See* Motion

6

at pp. 13-15) Plaintiff attempts to downplay these distinctions in her Brief in Opposition, but critically fails to present any evidence disputing that these distinctions were the reasons that Rosenberg did not terminate Kolack. More importantly, Plaintiff fails to adduce any evidence suggesting that Rosenberg did not terminate Kolack because of his gender and national origin.

First, it is undisputed that Kolack, not Plaintiff, was heavily involved in new product development for Redflex at the time he was placed on his PIP and was focusing much of his time and energy on a new product for Redflex, Student Guardian. (*See* Motion at pp. 13-15; Kolack Dec. ¶¶7, 9; Kolack Dec. Ex. C) Indeed, Kolack was the only Redflex sales employee who was essentially performing two different jobs at the time he was placed on the PIP: 1) identifying and developing the market for Student Guardian; and 2) marketing Redflex's red-light and speed cameras in his sales territory. (*Id*.) Plaintiff, on the other hand, was only responsible for marketing Redflex's red-light and speed camera products in her sales territory, and had had no sales success at all for the entire calendar year of 2011. (Pl. Dep. 83-85, 100)

Given his in-depth knowledge and experience with Student Guardian during the period of his PIP, Kolack was uniquely qualified for the National Business Director position, which was outlined in the Business Development Transfer Plan that Rosenberg drafted. (*See* Kolack Dec. ¶¶7-8 14; Kolack Dec. Ex. C) Indeed, Rosenberg explained this in an email to Karen Finley ("Finley") and Stevens dated December 19, 2011:

> Obviously this transfer is not being offered to Darren [Kolack] as a "deal", [Kolack] has been focused (consumed) on this effort since June and it has consumed his time and focus.
>
> As an organization, during Q1, we determined [Student Guardian] is becoming a corporate priority, as such, [Kolack] is the most knowledge [sic] person in this vertical and has lead [sic] all efforts in this solution's overall development.
>
> (*See* Petzel Dec.[6] Ex. 1 at D001812)

---

[6] "Petzel Dec. Ex." refers to the exhibits submitted in support of the Declaration of Catherine Petzel dated November 16, 2014 which was attached as Exhibit 28 to Plaintiff's Brief in Opposition.

Thus, based on all of the evidence presented, it is clear that Kolack's experience and knowledge of the Student Guardian product, not his gender or national origin, motivated Rosenberg to make an exception under the circumstances and transfer Kolack to Student Guardian despite the fact that he did not meet the goals of his PIP.[7]

Second, to address the fact that Kolack lost much of his sales territory during the period of the PIP, Plaintiff claims that she too "suffered significant legal and political obstacles during her tenure with Redflex," and that Iowa, was "infertile ground." (Petzel Dec. ¶¶3-4; Brief in Opp. at p. 18)  Assuming as it must for purposes of summary judgment that Iowa was a difficult territory in terms of executing contracts, it still remains that Petzel was not precluded from marketing to cities in Iowa as Kolack was from marketing to cities in Arizona or New Mexico. The fact that Petzel struggled to execute contracts in Iowa pales in comparison to the fact that Kolack absolutely could not market to two of the states in his sales territory.

During the period of his PIP, Kolack was forced to end the final phases of contract negotiation with one city in Arizona as a result of the political backlash to red-light cameras in

---

[7] In her Brief in Opposition, Plaintiff argues that this Court should disregard the statements made in Kolack's Declaration regarding his transfer to Student Guardian because they "directly" contradict his deposition testimony.  (Brief in Opp. at p. 11, fn 3)  However, a closer read of Kolack's deposition testimony reveals that the portion cited by Plaintiff was taken out of context.  The following is Kolack's full testimony on the reasons he was given by Rosenberg for his decision not to terminate his employment, which is consistent with the Business Development Transfer Plan drafted by Rosenberg:

    Q:    Who told you you were not fired?
    A:    Aaron Rosenberg.
    Q:    How did he tell you?
    **A:**    **Through a direct conversation surrounding Student Guardian, which was a new division and product line that I was getting off the ground at that time.**
        . . .
    Q:    Why did Mr. Rosenberg tell you that you were not – What did Rosenberg tell you about why you were not being fired?
    **A:**    **Because, according to what I just went through and he knew, executing Rio Rancho and Nogales although it was pulled back from the executive team, I met my plan objectives.**  (Kolack Dep. 16-17)(Emphasis added)

the state.  (Kolack Dec. ¶11; Kolack Dec. Ex. C)  Plaintiff, on the other hand, was never told by Redflex that she could not market to cities in Iowa, and she certainly was never told to terminate the final phases of contract negotiation in any Iowa or Ohio city during the period of her PIP.

Finally, it is undisputed that Kolack had been with Redflex longer than Plaintiff and had a better overall sales record than Plaintiff.  At the time they were each placed on PIPs, Plaintiff had executed only three executed contracts in her approximately three years with Redflex, none of which were large enough to generate any sales commission for her, while Kolack had already executed eleven contracts during his four years with the Company.  (Pl. Dep. 85-86, 90; Kolack Dec. ¶9; Kolack Dec. Ex. A)  Kolack's proven track record clearly played an important role in Rosenberg's decision to transfer him to Student Guardian despite the fact that he also did not meet his PIP goals.  (*See* Kolack Dec. Ex. C)  Indeed, Rosenberg noted Kolack's "historical success" in securing executed contracts for Redflex as one of the primary reasons for his decision to transfer Kolack to the Student Guardian role.  (*Id.*)

Accordingly, Plaintiff has failed to demonstrate that Rosenberg's decision not to terminate Kolack and transfer him to Student Guardian full-time was pretext for gender or national origin discrimination and Redflex should be granted summary judgment on all of Plaintiff's claims.

> b. **Rosenberg did not violate any policy by transferring Kolack to Student Guardian.**

Plaintiff further claims that Rosenberg violated Redflex's internal transfer policy by transferring Kolack to the Student Guardian role because Kolack had been on the PIP several months prior to the transfer.  (Brief in Opp. at p. 26)  However, Redflex's internal transfer policy did not apply under the circumstances, and even if it did, Rosenberg did not violate the policy.

9

The internal transfer policy that Plaintiff refers to in her Brief in Opposition is directed at employees who apply for job openings within the Company, which is not what happened here, and states that the "transfer prerequisites" (i.e. employee may not be transferred after receipt of corrective action within prior six months) may not apply if "the transfer meets the needs of the business and is approved by HR and/or the department executive." (*See* Petzel Dec. Ex. 1 at D001809-1810)  Here, Rosenberg transferred Kolack to the position of National Business Director for Student Guardian because of Kolack's unique experience and involvement with the development of this new product.  Kolack did not apply for any job opening with Redflex. (*See* Kolack Dec. Ex. C)  Thus, the transfer policy and its prerequisites did not apply under the circumstances.

Even if the transfer policy did apply to Kolack, Rosenberg was not required to follow the transfer prerequisites because he approved the transfer and it clearly met the needs of Redflex's business for all the reasons already discussed herein and in Redflex's Motion.  Moreover, failure to follow internal policies or procedures, standing alone, is insufficient to create a permissible inference of discriminatory intent.  *See Huston v. Tenn. State Bd. of Regents,* 1996 U.S. App. LEXIS 14399 *6 (6th Cir. April 22, 1996)*; see also Felder v. Nortel Networks Corp.,* 187 Fed. Appx. 586, 595 (6th Cir. July 10, 2006)(company's failure to follow internal job posting procedures did not establish pretext because posting was unavailable to all employees, regardless of gender or race.); *McCormack v. Frank,* 1994 U.S. App. LEXIS 21619 *13 (6th Cir. Aug. 10, 1994) ("[Plaintiff's] claim that the defendant failed to follow published hiring procedures has no bearing on the non-pretextual nature of [defendant's] articulated reason for not selecting the plaintiff.").

While the Sixth Circuit Court of Appeals has held that failure to follow internal procedures can be evidence of pretext, this evidence is only probative of discrimination when shown that a company applied the same standard differently to people in different race, age, or gender groups. *See Durante v. Ohio Civil Rights Com.,* 902 F.2d 1568 (6th Cir. 1990) (*per curiam*). Here, Plaintiff has presented no evidence suggesting that Rosenberg applied the internal transfer prerequisites differently to female or non-American employees. Accordingly, the fact that Rosenberg may not have followed the transfer prerequisites contained in the internal transfer policy under these circumstances is not proof of any pretext for unlawful gender or national origin discrimination and Redflex is entitled to summary judgment on Plaintiff's claims.

### 3. Redflex has not offered "shifting" rationales for Plaintiff's termination.

Plaintiff also claims in her Brief in Opposition that Redflex has offered "shifting" rationales for her termination. In support of her claim, Plaintiff cites to the deposition testimony of Finley and Stevens as well as Redflex's responses to Plaintiff's First Set of Discovery Requests ("Discovery Requests") and argues that each contains statements that are "inconsistent" with one another. (Brief in Opp. at p. 28) Yet, Plaintiff admits that both Stevens and Finley testified that Plaintiff was ultimately terminated from Redflex because she failed to meet the terms of her PIP, which was consistent with Redflex's responses to Plaintiff's First Set of Discovery Requests. (Brief in Opp. at pp. 28-29) Etzbach, Petzel's direct supervisor at Redflex, also stated that Plaintiff was terminated for failing to meet the goals of her PIP. (Etzbach Dec. ¶12) Therefore, Plaintiff has failed to adduce any evidence suggesting that Redflex offered "shifting" rationales for her termination considering that Finley, Stevens, Etzbach and Redflex all cited Plaintiff's failure to meet the terms of her PIP as the reason for her termination.

While Stevens and Redflex noted two **additional** reasons for Plaintiff's termination, namely the fact that Plaintiff was not involved in Student Guardian efforts and had consistently failed to meet her sales goals throughout her employment, this is not evidence of pretext because these additional reasons did not contradict or change Redflex's rationale for terminating Plaintiff. *Trapp v. TSS Techs., Inc.*, 485 Fed. Appx. 757, 760-761 (6th Cir. Ohio 2012) (additional reasons given by employer for terminating plaintiff's employment that were stated in response to EEOC charge were not evidence of pretext given context of communication and because they did not contradict employer's asserted justification for terminating plaintiff.)  Here, taken in the context of this litigation, the additional reasons given by Stevens and Redflex were clearly offered to distinguish Plaintiff's performance from Kolack's considering that Kolack had also failed to meet the terms of his PIP but was not terminated.  Indeed, these reasons **in conjunction** with Plaintiff's failure to meet the terms of her PIP ultimately resulted in her termination and are also the reasons why Redflex did not terminate Kolack's employment.

To defeat a *prima facie* case of discrimination, Redflex need only articulate a legitimate, non-discriminatory reason for the termination decision. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 257 (1981).  This minimal burden exists to prevent courts from entangling themselves in discussions about the wisdom of business decisions, as the law does not require perfect business judgment on the part of employers. *See, e.g. Bush v. Am. Honda Motor Co.*, 227 F.Supp.2d 780, 797 (S.D. Ohio 2002) (the court "does not sit as a super personnel department to second guess an employer's facially legitimate business decision").

Redflex has met this burden.  Simply put, Plaintiff did not meet the terms of her PIP and there were no mitigating factors supporting the retention of her employment as there were with

12

Kolack.  Accordingly, Plaintiff has failed to demonstrate that Redflex "changed" its rationale for terminating her employment and Redflex is entitled to summary judgment as a matter of law.

    **4.    There is No Evidence That Aaron Rosenberg Had a Gender or National Origin Bias.**

Even if Plaintiff could prove that Redflex's asserted reason for terminating her employment was false, which she cannot, Plaintiff has produced no evidence that her gender or national origin was the real reason for her discharge.  *See, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)(a plaintiff cannot show pretext unless she demonstrates both that the employer's asserted reason was false, *and* that discrimination was the real reason.)

Here, Plaintiff exclusively argues that Rosenberg was the "bad actor" or discriminator.  However, Plaintiff has failed to present any evidence suggesting that Rosenberg had a bias against females or Australians.  As noted above and in Redflex's Motion, it is undisputed that Rosenberg never made any gender-related comments to Plaintiff, nor did Plaintiff ever witness Rosenberg making gender-related comments to anyone else.  At most, Plaintiff claims that very few female sales employees worked at Redflex and that Etzbach allegedly told her, without any explanation, that Rosenberg had targeted her because of her gender.  (Brief in Opp. at pp. 2, 13)  The fact that there were not as many female sales employees at Redflex as there were male sales employees, without more, is not evidence of any gender bias and is irrelevant in this disparate treatment case.  *See, e.g., Hartsel v. Keys*, 87 F.3d 795, 801-02 (6th Cir. 1996)(statistical evidence is not evidence of discriminatory treatment); *Smith v. Leggett Wire Co.*, 220 F.3d 752, 761-62 (6th Cir. 2000)(the racial, age, or gender make-up of a department must be cast against a proper background (e.g., qualified applicants, industry or geographic norms) to constitute valid evidence of discrimination in a disparate treatment case.)

Moreover, Etzbach's vague and unsupported statements allegedly made to Plaintiff after her termination should not be given any weight because they are hearsay and inconsistent with those statements made in Etzbach's Declaration. *See* Fed. R. Civ. P. 56(c)(2)("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); *Flones*, *supra*, 567 Fed. Appx. at 404 (6th Cir. 2014); *Alpert*, *supra,* 481 F.3d at 409 (6th Cir. 2007).

Further, in addition to Kolack and Charlie Buckels, Redflex identified four other American male sales employees who were placed on PIPs by Rosenberg for poor sales performance. (*See* Motion at pp. 16-17) A cursory review of the PIPs for each of these sales employees demonstrates that the PIPs are similar in all material respects to Plaintiff's PIP, and in some cases, much less forgiving in their terms and conditions (i.e. length of PIP, etc.) (*See* Anton Dec.[8] Exs. A, C, F, H) Indeed, Niels Nielsen ("Nielsen"), an American male, requested additional time to meet his goals under his 30-day PIP[9], but Rosenberg refused to extend the PIP and terminated his employment instead.[10] (*See* Anton Dec. ¶11; Anton Dec. Ex. F)

Finally, it is undisputed that Rosenberg consulted with both Finley and Stevens prior to placing Plaintiff on a PIP and terminating her employment. (*See* Motion at p. 8; Brief in Opp. at pp. 3, 4, 9, 11-13) Thus, the involvement of these two females in the decision making process critically undermines Plaintiff's claim that she was placed on a PIP and later terminated because

---

[8] "Anton Dec." refers to the Declaration of Donetta Anton dated October 8, 2014, which was included in Defendant's Appendix as Exhibit 3 and filed with this Court on October 17, 2014.

[9] In contrast, Rosenberg actually extended Petzel's PIP for 90 days in October 2011 to allow her additional time to meet her sales goals.

[10] In her Brief in Opposition, Plaintiff points out that a chart produced by Redflex during discovery indicates that Nielsen left Redflex "voluntarily". However, Redflex produced an amended and updated version of this chart to Plaintiff's counsel on December 8, 2014. A copy of the amended and updated chart reflecting, among other things, Nielsen's termination for failing to meet the terms of his PIP is attached as Exhibit 1 to the Declaration of Donetta Anton dated December 8, 2014 and which is attached hereto as Exhibit A.

of her gender. *See, e.g., Carter v. Mansfield*, 2008 U.S. Dist. LEXIS 79641 *16 (N.D. Ohio Sept. 16, 2008) (plaintiff failed to establish *prima facie* case of reverse gender discrimination where primary decision maker was female, but she consulted with at least one male employee prior to making hiring decision.); *Fosen v. N.Y. Times*, 2006 U.S. Dist. LEXIS 75662 *5 (S.D.N.Y. Oct. 11, 2006)(any inference of discrimination was "critically undermined" by the fact that the decision makers belonged to the same protected class as did the plaintiff); *Connell v. Consol. Edison Co.*, 109 F. Supp. 2d 202, 210 (S.D.N.Y. 2000)(plaintiff failed to demonstrate discrimination where decision makers were members of the same protected class (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991)).

Accordingly, there is simply no evidence that Rosenberg had any type of bias against Plaintiff because of her gender and national origin. Thus, Defendant should be granted summary judgment on all of Plaintiff's claims.

## II. CONCLUSION

For each and all of the foregoing reasons, Defendant Redflex Traffic Systems, Inc. respectfully submits that it should be granted summary judgment as to all claims set forth in Plaintiff's Complaint and this case should be dismissed in its entirety as a matter of law.

Respectfully submitted,

**JACKSON LEWIS P.C.**

*/s/ Vincent J. Tersigni*
Vincent J. Tersigni (0040222)
Michelle T. Hackim (0084941)
6100 Oak Tree Blvd, Suite 400
Cleveland, OH 44131
Tel: (216) 750-0404; Fax: (216) 750-0826
Email: Vincent.Tersigni@jacksonlewis.com
 Michelle.Hackim@jacksonlewis.com

*Attorneys for Defendant
Redflex Traffic Systems, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this **8th** day of December, 2014, the foregoing **Defendant Redflex Traffic Systems, Inc.'s Reply Brief in Support of Its Motion for Summary Judgment** was filed with the United States District Court for the Southern District of Ohio. Notification of this filing will be sent to all parties via the Court's electronic filing system.

>  */s/ Vincent J. Tersigni*
>  Vincent J. Tersigni  (0040222)
>  **Jackson Lewis P.C.**
>
>  *One of the Attorneys for Defendant*

4817-7773-6736, v.  1